## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**ERIC R. ATKINSON,**

        **Plaintiff,**

                               **Civil Action 2:20-cv-1642**
    **v.**                            **Judge James L. Graham**
                               **Magistrate Judge Jolson**

**MUSKINGUM COUNTY**
**COMMISSIONERS, et al.,**

        **Defendants.**

### REPORT AND RECOMMENDATION AND ORDER

        This matter is before the Court on Defendants' Motion for Summary Judgment. (Doc. 18). For the reasons that follow, the Undersigned **RECOMMENDS** Defendants' Motion be **GRANTED**. Additionally, given this recommendation, Defendants' Motion to Strike Reply to Response (Doc. 27), is **DENIED as moot**.

**I.      BACKGROUND**

        Plaintiff Eric Atkinson is a *pro se* prisoner currently incarcerated at Noble Correctional Institution. (Doc. 1 at ¶ 1). Plaintiff has sued the Muskingum County Board of Commissioners ("the Board") and the Muskingum County Sheriff's Department ("MCSO"), as well as individuals: Sheriff Matt Lutz, Deputy Sergeant Ryan Williams, Deputy Ryan Dodson, Deputy Michael Lynn, Deputy Jeremy Archer, and K-9 Deputy Narco ("Defendant Deputies"). (*Id*. at 2–3).

        The following allegations are taken from Plaintiff's Complaint. On October 29, 2017, members of the MCSO arrived at Plaintiff's home because of a complaint that he assaulted the mother of his children. (*Id*., ¶ 7). Deputies spoke to Plaintiff through a kitchen window, and Plaintiff indicated that they could not come inside without a warrant. (*Id*., ¶¶ 7–8).

Shortly thereafter, Defendant Williams allegedly raised the screen in the window and, along with Defendant Dodson, "dove through the kitchen window" landing on top of Plaintiff and his sister, Miranda Rittenhouse. (*Id.*, ¶ 10). Plaintiff was knocked unconscious from his head hitting the floor, and Defendants Williams and Dodson "began to punch on the Plaintiff with closed fist[s]." (*Id.*, ¶ 11). After being handcuffed, another deputy on the scene, Defendant Archer, "punched the Plaintiff twice more with a closed fist" causing Plaintiff to fall "back to the floor." (*Id.*, ¶ 12). Defendant Archer "also allowed his K-9 partner Defendant Narco to aggressively put its face within inches of [] plaintiff, as if Defendant Archer was going to allow Defendant Narco to bite Plaintiff with no provocation." (*Id.*, ¶ 13). While Plaintiff was unconscious, Defendants Williams, Archer, Dodson, and Lynn "punched and kicked Plaintiff repeatedly." (*Id.*, ¶ 15). Deputies then dragged Plaintiff outside where he "began coming to and started screaming for help." (*Id.*, ¶ 17). He was subsequently taken to the hospital where he was treated for a number of injuries to his head and face. (*Id.*, ¶¶ 18–19). After leaving the hospital, Plaintiff was taken to Muskingum County Jail "where on several occasions [he] complained of damage[] to his left eye and right ear and was told by the jail staff that he would be fine." (*Id.*, ¶ 20).

After Defendants filed the instant Motion for Summary Judgment (Doc. 18), Plaintiff filed a Motion to Dismiss Defendants' Motion (Doc. 19), which the Court treated as Plaintiff's response. (Doc. 20). Now that Defendants have filed their reply (Doc. 21), the Motion is fully briefed and ripe for resolution.

## II. STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts

to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (defining "genuine" as more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III.  DISCUSSION

Defendants have moved for summary judgment on all of Plaintiff's claims. (*See generally* Doc. 18). The complaint, although not a model of clarity, asserts federal claims for excessive force, deliberate medical indifference, municipal and supervisory liability, conspiracy as well as several claims under state law. (*See generally* Doc. 1). The Court addresses each in turn. First, however, the Undersigned must review Plaintiff's previously filed action in this Court.

### A.  Plaintiff's Previous Suit

This is a refiled action. On June 16, 2019, Plaintiff filed a similar suit in this Court, asserting generally the same claims, against the same Defendants. *See Atkinson v. Muskingum Cty. Comm'rs*, 2:19-cv-2565-JLG-KAJ (S.D. Ohio). There, the Court dismissed with prejudice Plaintiff's third cause of action against the individual defendants for entering his residence without a warrant or probable cause in violation of the Fourth Amendment. *Atkinson v. Muskingum Cty. Comm'rs*, No. 2:19-cv-2562, 2020 WL 886217, at *1 (S.D. Ohio Feb. 24, 2020). Shortly thereafter, the Court dismissed without prejudice the remaining two causes of action in Plaintiff's

3

complaint, finding that he had not truthfully represented his income and assets on his application to proceed without prepayment of fees. *Id*.

In his response in the instant case, Plaintiff seems to re-assert his cause of action for illegal search and seizure. (*See generally* Doc. 19). Specifically, he asserts that "Defendants ha[ve] not demonstrated that there were exigent circumstances at the time that the deputies . . . cross[ed] the threshold of Plaintiff's home." (*Id*. at 13). To the extent Plaintiff is attempting to reassert this claim here, he is barred from doing so. In his previous case, the Court determined that "[a] finding of illegal entry would also compromise the validity of [P]laintiff's felonious assault and domestic violence convictions to the extent that they were based on evidence obtained as a result of the illegal entry." *Atkinson*, 2020 WL 886217, at *1. Accordingly, this claim was dismissed with prejudice. *Id*.

As a result of this disposition, and to the extent Plaintiff is attempting to reassert his claim for illegal search and seizure in the instant case, he is barred from doing so. Accordingly, the Undersigned **RECOMMENDS** Defendants be **GRANTED** summary judgement on any such duplicitous claim in Plaintiff's complaint.

### B. Excessive Force

Turning to his other claims, Plaintiff's excessive force claim alleges that he was assaulted by the individual defendants while he was being placed under arrest. (Doc. 1 at ¶ 25). Defendants argue that the Supreme Court's decision in *Heck v. Humphrey* bars the claim. (Doc. 18 at 7 (citing 512 U.S. 477, 490 (1994)).

In *Heck*, the Supreme Court held that a prisoner may not bring a § 1983 action "where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (explaining the import of *Heck* and its progeny). Here, Plaintiff pled guilty and was convicted of resisting arrest. *See State v. Atkinson*, No. CT2018-0015, 2018 WL 5279078, at *1 (Ohio Ct. App. Oct. 22, 2018). So this Court must

4

now consider the relationship of Plaintiff's conviction to his constitutional claim for excessive force.

"There are two circumstances in which an excessive-force claim may conflict with a conviction: (1) when the criminal provision makes the lack of excessive force an element of the offense; or (2) when excessive force is an affirmative defense to the crime. *Colson v. City of Alcoa*, 458 F. Supp. 3d. 887, 910 (E.D. Tenn. 2020) (citing *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010)). Under Ohio law, "although excessive force is not an element of resisting arrest, it is an affirmative defense to a charge of resisting arrest." *Hayward v. Cleveland Clinic Found.*, 759 F. 3d 601, 614 (6th Cir. 2014). Accordingly, a guilty plea and resultant conviction of such a charge necessarily includes a finding that the officer did not use excessive force. *Id*. The analysis does not end there, however. "For *Heck* to bar a § 1983 claim, success on the claim must necessarily imply the invalidity of the conviction—both the § 1983 claim and the conviction must arise out of the same events." *Parvin v. Campbell*, 641 F. App'x 446, 450 (6th Cir. 2016). Conversely, when a plaintiff alleges excessive force occurred after he was handcuffed and brought under control, the excessive force is not "inextricably intertwined" with the resistance to arrest and is therefore not barred by *Heck*. *Id*. So timing matters.

While Plaintiff offers a few conclusory allegations in his complaint that the alleged excessive force occurred after he was placed under arrest (*see* Doc. 1 at ¶¶ 12, 15), this case has moved beyond the pleadings. And Plaintiff's deposition testimony, as well as other evidence in the record, directly contradicts his earlier allegation. To start, multiple times in his sworn deposition testimony, Plaintiff asserts that he was the victim of an "unprovoked attack" and that any excessive force occurred during his arrest, not after. (Doc. 15 at 134:22–135:2, 189:7–10). Furthermore, each of the Defendant Deputies' statements support this version of events—that any

excessive force occurred before or during Plaintiff's arrest. (*See* Doc. 19-1 at 3–22). For example, Defendant Williams stated that "[a]t one point [Plaintiff] was on his stomach and I was attempting to place him in handcuffs, but he was pulling his arms away and placing them under his body near his waist line." (Doc. 19-1 at 4). Similarly, Defendant Lynn stated that "after several minutes of fighting with [Plaintiff], [Defendant] Williams was able to handcuff [Plaintiff] behind his back. I then picked [Plaintiff] up off the ground to stand him on his feet" (*Id.* at 11). What is more, Plaintiff testified that he has no "first hand knowledge" of the alleged excessive force actions, as he was allegedly unconscious. (Doc. 15 at 132:22–135:16).

"While the Court strives to construe the [P]laintiff['s claims in the light most favorable to [him], [he] unfortunately, ha[s] provided scant evidence in support of [his] claims, and very little clarification of [his] account of the events." *Lowe v. Henson*, No. 3:05-cv-275, 2007 WL 2022205, at *5 (E.D. Tenn. July 11, 2007) (finding that the "most useful evidence" in evaluating the plaintiffs' Fourth Amendment claim was their own deposition testimony). Because Plaintiff has admitted, in his sworn deposition testimony, that the basis for his excessive force claim stems from actions taken by the Defendant Deputies during his arrest, the Court will accept this version of events. *Colson*, 458 F. Supp. 3d at 911; *see also U.S. ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 302–03 (6th Cir. 1998) (holding that "a party cannot avoid summary judgment" where self-serving affidavits contradict sworn testimony).

Because Ohio law makes an officer's excessive use of force an affirmative defense to a charge of resisting arrest—and such a conviction necessarily includes a finding that the officer did not use excessive force—Plaintiff's conviction for resisting arrest forecloses his claims of excessive force against the Defendant Deputies. *Parvin*, 641 F. App'x at 449. As illustrated above, "this case does not fall within the scenario where the use-of-force occurred [] after the [arrest] . . .

[i]nstead, the alleged use-of-force is inextricably intertwined with the conduct that Plaintiff admits was the basis for the resisting charge to which [he] pleaded guilty." *Colson*, 458 F. Supp. 3d at 912; *see also Parvin*, 641 F. App'x at 450 (holding that, because Plaintiff's "excessive force claim arises out of the same conduct that led to his [resisting arrest] conviction[,]" the claim was barred by the *Heck* doctrine). Accordingly, because there is no genuine dispute as to any material fact regarding Plaintiff's excessive force claim, the Undersigned **RECOMMENDS** Defendants be **GRANTED** summary judgment on this claim.

### C. Municipal and Supervisory Liability

Next, Plaintiff aims to "hold [MCSO and the Board] liable [] for negligent training of its sheriff's department deputies." (Doc. 1 at ¶ 21). Additionally, Plaintiff alleges that Defendant Lutz "[f]ail[ed] to properly investigate the use of force during the course of Plaintiff's arrest[,] [and] [f]ail[ed] to adequately supervise and discipline [his] deputies." (*Id.*, ¶¶ 72–74). These claims fail for two important reasons.

To begin, in as much as Plaintiff is asserting claims against MCSO and the Board for municipal liability under § 1983, those claims are precluded by the *Heck* doctrine. "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *Scott v. Clay Cty.*, 205 F. 3d 867, 879 (6th Cir. 2000). Given the analysis above, finding that the Defendant Deputies are entitled to summary judgment because there was no constitutional violation, Plaintiff's claim against MCSO and the Board must also fail. *See DeMerrell v. City of Cheboygan*, 206 F. App'x 418, 429 (6th Cir. 2006) ("[I]f the officer inflicted no constitutional injury on a person, then it is inconceivable that the city could be liable to the person.").

Moreover, in regard to supervisory liability against Defendant Lutz, that claim too is precluded by the *Heck* doctrine. To find supervisory liability under § 1983, "[a]t a minimum, [] plaintiff must show that a supervisory official at least implicitly authorized, approved [or] knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005). Accordingly, if there is no unconstitutional conduct by an offending subordinate, as in the instant case, Plaintiff cannot make the required showing. *DeMerrell*, 206 F. App'x at 430.

Ultimately, the disposition of these two claims hinges on the analysis of Plaintiff's excessive force claim above. Because the Undersigned finds that Defendants are entitled to summary judgment on that claim, no municipal or supervisory liability can exist. As a result, it is **RECOMMENDED** that Defendants be **GRANTED** summary judgment on these claims as well.

### D. Deliberate Medical Indifference

Next, Plaintiff alleges that MCSO and the Board failed "to provide [him with] adequate and prompt medical assistance" in treating the alleged injuries sustained during his arrest. (Doc. 1 at ¶¶ 22, 41–42). Defendants counter these allegations on two grounds. First, they argue that because Plaintiff has failed to exhaust his intra-prison administrative remedies prior to filing this suit, his claim must be dismissed. (Doc. 18 at 14–15). Additionally, they assert that regardless of Plaintiff's failure to exhaust, his allegation of medical indifference is unsupported by the evidence. (*Id*.). The Court addresses both arguments.

#### 1. Failure to Exhaust

First, Defendants argue that Plaintiff's medical indifference claim must be dismissed because he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"). (Doc. 18 at 14–15). "Failure to exhaust administrative remedies

under the PLRA is an affirmative defense that must be proved by the defendant." *Anderson v. Shelby Cty. Gov't*, No. 03-2650-P, 2009 WL 3241676, at *5 (W.D. Tenn. Sept. 30, 2009) (citing *Jones v. Bock*, 549 U.S. 199, 212 (2007)). "Once Defendants put forth evidence of its affirmative defense of failure to exhaust administrative remedies, Plaintiff [is] required to present 'significant probative evidence' to defeat the motion for summary judgment." *Pullen v. Combs*, No. 1:17CV255, 2020 WL 1451564, at *1 (S.D. Ohio Mar. 25, 2020) (quoting *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011)).

The exhaustion question in this case is simple. Plaintiff admits he did not exhaust his administrative remedies. And the record confirms this. As Defendants note, "MCSO has an Inmate Handbook that sets forth an inmate grievance procedure and an official policy on how to address such medical grievances." (Doc. 18 at 15; citing Doc. 15-1 at 233–35). That policy requires inmates to "voice any grievance in writing to the shift supervisor." (Doc. 15-1 at 235). In his sworn deposition testimony, Plaintiff represents that he never filed any such written grievance. (Doc. 15 at 185:3–5, 187:1–4).

In sum, Plaintiff indisputably failed to exhaust, and Defendants are entitled to summary judgment. *See, e.g., Bridgmon v. Biery,* No. 3:10-CV-02735, 2011 WL 6415530, at *3 (N.D. Ohio Dec. 21, 2011) (granting defendant summary judgment where plaintiff admitted that he did not attempt to utilize the institution's grievance system).

*2. Merits*

While the Court need not address the merits of Plaintiff's deliberate indifference claim because he failed to exhaust it, it is worth noting that the record shows that Defendants were not deliberately indifferent to his medical needs. "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth

Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation and quotation marks omitted). To prevail on a deliberate indifference claim, the inmate must satisfy a two-pronged test containing both an objective and a subjective prong. *Rhinehart v. Scutt*, 894 F. 3d 721, 737 (6th Cir. 2018) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

"The objective component requires a plaintiff to prove that the alleged deprivation of medical care was serious enough to violate the Eighth Amendment." *Rhinehart*, 894 F. 3d at 737 (citing *Farmer*, 511 U.S. at 834). A medical need is sufficiently serious if it "'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Jones v. Muskegon Cty.*, 625 F. 3d 935, 941 (6th Cir. 2010) (quoting *Harrison v. Ash*, 539 F. 3d 510, 518 (6th Cir. 2008)).

The subjective component requires a plaintiff "show that prison officials had a sufficiently culpable state of mind." *Napier v. Madison Cty., Ky.*, 238 F. 3d 739, 742 (6th Cir. 2001) (quotation marks and citation omitted). This burden is heavy. A plaintiff must show: "(1) the official being sued subjectively perceived facts from which to infer a substantial risk to the prisoner, (2) the official did in fact draw the inference, and (3) the official then disregarded that risk." *Richko v. Wayne Cty., Mich.*, 819 F. 3d 907, 915 (6th Cir. 2016) (quotation marks and citations omitted). While a plaintiff "need not show that [a defendant] acted with the specific intent to harm," *Phillips v. Roane Cty., Tenn.*, 534 F. 3d 531, 540 (6th Cir. 2008), the defendant must have "recklessly disregard[ed] th[e] risk," *Dominguez v. Corr. Med. Servs.*, 555 F. 3d 543, 550 (6th Cir. 2009).

Plaintiff cannot demonstrate either prong, and thus summary judgment is appropriate here. To begin, the record shows that his injuries were not sufficiently serious. In fact, when he was evaluated by various medical professional following his arrest and incarceration, each found his injuries were minor or had healed. (*See* Doc. 19-1 at 46 ("[n]o acute traumatic injury of the facial

10

bones[,] [and] no skull fracture seen"); *id*. at 50 ("[n]o abrasion or other abnormalities seen on []
exam of the eyes"); *id*. at 198 ("no residual findings or permanent injury")).

Furthermore, regardless of the alleged seriousness of Plaintiff's medical need, his own
testimony confirms that prison officials did not deprive him of medical treatment with the required
scienter. At his deposition, Plaintiff represents that upon his admission to the Muskingum County
Jail he was evaluated by medical personnel. (Doc. 15 at 161:13–18). In fact, he testified that he
saw a physician less than two days after being arrested and saw various healthcare professionals
almost every day thereafter. (*Id*. at 177:18–20; 179:2–4). Furthermore, when he requested to be
seen by these healthcare professionals, those requests were responded to within the same day. (*Id*.
at 182:17–21). Nothing in this course of events indicates that anyone involved in treating Plaintiff
acted with a mental state "equivalent to criminal recklessness." *Rhinehart*, 894 F. 3d at 737
(quoting *Miller v. Calhoun Cty.*, 408 F. 3d 803, 819 (6th Cir. 2005) ("The plaintiff must present
enough evidence for a factfinder to evaluate the adequacy of the treatment provided and the
severity of the harm caused by the allegedly inadequate treatment.")).

Ultimately, given both the procedural and substantive failures of Plaintiff's medical
indifference claim, the Undersigned **RECOMMENDS** Defendants be **GRANTED** summary
judgment on this claim.

### E.  Conspiracy

Finally, Plaintiff alleges that the Defendant Deputies "lied on official documents and
conspired to deprive [] Plaintiff of his federally protected civil rights." (Doc. 1 ¶ 28; *see also* Doc.
15 at 155:1–7 (clarifying that his conspiracy claims are against the Defendant Deputies only)). He
further alleges that "[Defendant Deputies] conspired their statements against [him] to fabricate
what they wanted it to say." (Doc 15 at 187:15).

At the outset, this claim fails because, considering the analysis above concerning his claims of excessive force and medical indifference, Plaintiff has failed to show a genuine issue of material fact as to whether he was deprived of his constitutional rights. *Bazzi v. City of Dearborn*, 658 F. 3d 598, 603 (6th Cir. 2011) (recognizing that in order for a conspiracy to exist there must be a "general conspiratorial objective of violating [plaintiff]'s constitutional rights").

Furthermore, "[a]lthough circumstantial evidence may prove a conspiracy, it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Marvaso v. Sanchez*, 971 F. 3d 599 (6th Cir. 2020). This is exactly what is occurring here. While plaintiff uses the word "conspiracy" several times throughout his complaint, he alleges "no facts suggesting the existence of a 'single plan.'" *Blick v. Ann Arbor Pub. Sch. Dist.*, No. 19-12127, 2021 WL 351997, at *14 (E.D. Mich. Feb. 2, 2021) (quoting *Jackson v. City of Highland Park*, No. 15-10678, 2015 WL 3409013, at *5 (E.D. Mich. May 27, 2015)). Simply alleging that the "Defendants were [] in contact with each other throughout [the] investigation" is not enough. *Id*. Importantly, when asked at his deposition what evidence he had of this alleged conspiracy, Plaintiff admitted that he had none. (Doc. 15 at 155:1–7).

Accordingly, the Undersigned **RECOMMENDS** that the Defendant Deputies be **GRANTED** summary judgment on this claim.

### F.  State Law Claims

In his complaint, while not abundantly clear, Plaintiff asserts several negligence claims under Ohio Law. As the Undersigned has recommended Defendants be granted summary judgement on all of Plaintiff federal claims, the Court need not assume jurisdiction of Plaintiff's

state law claims. However, a brief analysis of those claims illustrates that they too fail on the merits.

Plaintiff alleges several state law claims against MCSO and the Board for negligence in providing medical assistance or training, as well as against the Defendant Deputies in their individual capacity for negligent performance of their duties. (Doc. 1 at ¶¶ 38, 42). Additionally, he alleges he was subject to the "unnecessary infliction of emotional distress" by the Defendant Deputies. (*Id.* at ¶¶ 49, 54, 58, 63). Defendants contend that they are entitled to statutory immunity against these claims. The Undersigned agrees.

First, regarding Plaintiff's state law claims against MCSO and the Board, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." *Jordan v. Murphy*, 145 F. App'x 513, 518 (6th Cir. 2005) (citing O.R.C. § 2744.02(A)(1)). There are however, five exceptions to this grant of immunity, laid out in O.R.C § 2744.02(B). Pertinent to Plaintiff's allegations, § 2744.02(B)(2) provides that "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." It is well-established that the performance of law enforcement duties is a governmental function, not a proprietary function. *Brothers v. Cty. of Summit*, No. 5:03-cv-1002, 2007 WL 1567662, at *23 (N.D. Ohio May 25, 2007) (citing O.R.C. § 2744.01(C)(2(a)). Accordingly, as the alleged negligent actions arose during the performance of a governmental function, MCSO and the Board are immune from liability.

13

Second, regarding the claims against the Defendant Deputies, Plaintiff alleges that each of them was "negligent in the performance of their duties," which resulted in him suffering emotional distress.  (Doc. 1 at ¶¶ 38, 49, 54, 58, 63).  Under Ohio law "a police officer cannot be held personally liable for mere negligence."  *Wingrove v. Forshey*, 230 F. Supp. 2d 808, 827 (S.D. Ohio Nov. 2002) ("The Court is to begin with the presumption of immunity.").  Accordingly, as Plaintiff only ever alleges that the Defendant Deputies acted negligently, his claims against them are barred by statutory immunity.

Thus, the Undersigned **RECOMMENDS** that Defendants be **GRANTED** summary judgment on these claims to the extent the Court assumes jurisdiction over them.

## IV.    CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 18) be **GRANTED** and Plaintiff's claims be dismissed.  Additionally, given this disposition, Defendants' Motion to Strike Reply to Response to Motion (Doc. 27), is **DENIED as moot**.

## V.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

14

evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: February 22, 2021                              /s/ Kimberly A. Jolson
                                                     KIMBERLY A. JOLSON
                                                     UNITED STATES MAGISTRATE JUDGE